**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CHARLES EDDY LEPP, LINDA SENTI          No   C-05-0566 VRW
and SMILEY JAMES HARRIS
                                                ORDER
             Plaintiffs

             v

ALBERTO GONZALES, et al,

             Defendants.
_____/

             Plaintiffs Charles Eddy Lepp, Linda Senti and Smiley
James Harris (collectively "plaintiffs") assert that on August 17,
2004, defendants seized thirty-two thousand marijuana plants and a
registered handgun belonging to plaintiffs.  Doc #1 (Compl) at 11.
Plaintiffs bring the current lawsuit in pro per seeking (1)
compensation for the property seized and (2) a permanent injunction
prohibiting defendants from seizing plaintiffs' marijuana in the
future.  Id at 21.  Defendants Alberto Gonzales, Drug Enforcement
Administration ("DEA") and DEA Administrator Karen Tandy
(collectively the "federal defendants") move to dismiss the
complaint pursuant to FRCP 12(b)(1) and (b)(6).  Doc #34 (Fed Mot).

United States District Court

For the Northern District of California

Defendants Lake County, Lake County Board of Supervisors, Lake County Sheriff's Department and Lake County Sheriff Rodney Mitchell (collectively the "municipal defendants") move to dismiss the complaint pursuant to FRCP 12(b)(6).  Doc #35 (Muni Mot). Plaintiffs oppose both motions.  Docs ##36, 40.  The court heard oral argument on July 28, 2005.  Based on the parties' memoranda and the applicable federal law, the court GRANTS both motions.

I

According to the complaint, plaintiffs are deeply religious individuals.  Lepp is "ordained as a minister in the Rastafari Ministry/Faith" and Senti is a member of the Rastafari faith.  Compl at 2-3.  Lepp and Senti state that they "consume[], possess[], cultivate[] and/or distribute[] cannabis as mandated by [their] sincere religious beliefs."  Id at 2.  Harris, who proclaims to be a "Citizen of the California Republic of African ancestry," is "ordained by the Universal Life Church as a Right Reverend."  Id.  Harris asserts that he "is required by his religion to consume, cultivate and distribute cannabis as sacrament."  Id at 3.

On August 17, 2004, DEA agent Mark Macanga applied for a warrant to search 9175 and 9176 Upper Lake Lucerne Road (Lucerne Parcel) in Upper Lake, California.  Id at 10.  It appears Lepp and Senti reside on the Lucerne Parcel which they refer to as "Eddy's Medicinal Gardens and Rastafari Chapel/Ministry."  Doc #40 at 2. Agent Macanga "described the items to be searched for and seized as including, but not limited too [sic]:  Marijuana in various forms, including growing plants, harvested plants or stalks, or dying,

2

dried or processed marijuana, [] marijuana seeds and/or marijuana plant 'clones' and [] equipment and tools associated with and used for the cultivation, use, storage, or processing of marijuana." Id.  Magistrate Judge Bernard Zimmerman of this court granted the application for a search warrant.  Id.

On August 18, 2004, several unnamed DEA agents, assisted by Sheriff Mitchell, executed the warrant.  During the search, the DEA agents seized "thirty-two thousand marijuana plants and a registered handgun."  Id at 11.  The complaint also alleges that the DEA seized "other materials & equipment, along with other miscellaneous property belonging to plaintiffs and other patients." Id.  Harris claims that 250 of the marijuana plants belong to him; the remaining 31,750 marijuana plants apparently belong to Lepp and Senti.  Compl at 11.

Lepp was arrested by DEA agents following the search and on September 28, 2004, he was criminally indicted (CR 04-317 MHP); Senti and Harris were "not available for arrest" during the search. Compl at 11.  Lepp was charged with one count of manufacturing and possessing marijuana with the intent to distribute in violation of 21 USC § 841(a)(1) and one count of maintaining a place for the purpose of distributing marijuana in violation of 21 USC § 856(a)(1).  04-317, Doc #6 (Indictment).  The criminal case is pending in this court before Judge Patel.

On February 8, 2005, plaintiffs filed the present lawsuit, asserting seven causes of action against the federal and municipal defendants stemming from the August 18, 2004, search of the Lucerne Parcel and the seizure of the marijuana:  (1) violation of the Religious Freedom Restoration Act of 1993, 42 USC § 2000bb-1

3

("RFRA"); (2) violation of the Commerce Clause; (3) "Fraud under FRCP 9(b)"; (4) violation of the Fourth Amendment; (5) violation of the Fifth Amendment; (6) violation of the Tenth Amendment; and (7) violation of the California Constitution.  Moreover, in their opposition to federal and municipal defendants' motions to dismiss, plaintiffs for the first time reference the Religious Land Use and Institutionalized Persons Act, 42 USC § 2000cc ("RLUIPA").  Doc #40 at 2.  It is unclear whether plaintiffs' opposition attempts to allege an eighth cause of action pursuant to RLUIPA, but to the extent the opposition attempts to state a new cause of action under RLUIPA, such an amendment to the complaint is procedurally improper and thus will not be addressed herein.  See Car Carriers, Inc v Ford Motor Co, 745 F2d 1101, 1107 (9th Cir 1984) ("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." (citations omitted)).

Plaintiffs pray "that the court issue a Permanent Injunction enjoining Defendants from arresting and/or prosecuting Plaintiff; and/or from seizing their medical marijuana."  Compl at 21.  Additionally, plaintiffs pray for "compensatory damages for the loss of property seized by defendants," prejudgment interest and attorney fees.  Id.  Plaintiffs (wisely) do not pray for the return of any of the seized property, as the Supreme Court has unequivocally held that controlled substances may not be returned pursuant to a motion to return property, even if the property was illegally seized.  Trupiano v United States, 334 US 699, 710 (1948) ("[S]ince the property was contraband, [defendants] have no right to have it returned to them.").

//

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

Federal defendants move to dismiss the complaint on the ground that this court lacks subject matter jurisdiction pursuant to FRCP 12(b)(1).  Fed Mot at 7-13.  Alternatively, federal defendants argue that the complaint should be dismissed for failure to state a claim under FRCP 12(b)(6).  Id at 13-20.  Municipal defendants move to dismiss the complaint for failure to state a claim under FRCP 12(b)(6).  Doc #35.

II

Initially, the court observes that the complaint makes sporadic reference to a separate DEA search of the Lucerne Parcel that occurred on August 27, 2002, during which 266 marijuana plants and other miscellaneous property were seized.  Compl at 9, 13.  Based upon the August 27, 2002, seizure, Lepp and Senti brought a civil action in pro per for the return of the 266 marijuana plants and other property seized.  C 02-5901 VRW, Doc #1.  In an order dated November 29, 2004, the undersigned dismissed Lepp and Senti's complaint and closed the file.  02-5901, Doc #58.

Federal and municipal defendants' motions to dismiss both argue that, to the extent the current complaint is premised on the August 27, 2002, search, those claims are barred by the doctrine of *res judicata*.  Fed Mot at 5-6; Muni Mot at 5 (both citing <u>Central Delta Water Agency v United States</u>, 306 F3d 938, 952 (9th Cir 2002)).

The court need not address defendants' *res judicata* arguments; the court does not read plaintiffs' complaint to premise <u>any</u> of the present seven causes of action on the August 27, 2002, raid.  Rather, the complaint makes quite clear that the present

5

seven causes of action are premised on the events that transpired on August 17 and 18, 2004.  Compl at 11-12, 16-18.  Further supporting this conclusion is the fact that plaintiffs' oppositions do not even mention, much less oppose, defendants' *res judicata* arguments.

## III

### *Municipal Defendants*

Plaintiffs sue Lake County, the Lake County Board of Supervisors (LCBS) in its official capacity, the Lake County Sheriff's Department (LCSD) and Sheriff Rodney Mitchell in both his official and individual capacity.  Compl at 5-6.  Municipal defendants do not contest this court's jurisdiction over the claims asserted against them.  Rather, municipal defendants move to dismiss pursuant to FRCP 12(b)(6).

### A

FRCP 12(b)(6) motions to dismiss essentially "test whether a cognizable claim has been pleaded in the complaint." Scheid v Fanny Farmer Candy Shops, Inc, 859 F2d 434, 436 (6th Cir 1988).  Although a plaintiff is not held to a "heightened pleading standard," the plaintiff must provide more than mere "conclusory allegations."  Swierkiewicz v Sorema NA, 534 US 506, 515 (2002) (rejecting heightened pleading standards); Schmier v United States Court of Appeals for the Ninth Circuit, 279 F3d 817, 820 (9th Cir 2002) (rejecting conclusory allegations).

Under Rule 12(b)(6), a complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that

United States District Court

For the Northern District of California

the plaintiff can prove no set of facts in support of his claim which would entitle [her] to relief." Hughes v Rowe, 449 US 5, 9 (1980) (citing Haines v Kerner, 404 US 519, 520 (1972)); see also Conley, 355 US at 45-46. Additionally, dismissal under Rule 12(b)(6) may be based on the "lack of a cognizable legal theory." Balisteri v Pacifica Police Dep't, 901 F2d 696, 699 (9th Cir 1990).

On a motion to dismiss, all material allegations in the complaint are taken as true and construed in the light most favorable to plaintiff. See In re Silicon Graphics Inc Securities Litigation, 183 F3d 970, 980 n10 (9th Cir 1999). But "the court [is not] required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v Golden State Warriors, 266 F3d 979, 988 (9th Cir 2001) (citing Clegg v Cult Awareness Network, 18 F3d 752, 754-55 (9th Cir 1994)).

**B**

Municipal defendants' Rule 12(b)(6) motion persuasively argues in favor of dismissing the complaint. First, municipal defendants argue that the claims against LCBS, LCSD and Sheriff Mitchell in his official capacity should be dismissed as wholly redundant given the fact that plaintiffs name Lake County itself as a defendant. Muni Mot at 3-5 (citing Vance v County of Santa Clara, 928 F Supp 993, 996 (ND Cal 1996)). Next, municipal defendants' mechanically address each of the seven causes of action alleged in the complaint and argue why each must be dismissed under FRCP 12(b)(6). Muni Mot at 8-15.

//

1    Plaintiffs' opposition does not address a large portion

2  of municipal defendants' motion to dismiss.  Specifically,

3  plaintiffs' opposition does not even <u>mention</u> municipal defendants'

4  arguments regarding the redundancy of the claims against LCBS, LCSD

5  and Sheriff Mitchell in his official capacity.  Moreover, a

6  thorough examination of plaintiffs' eight-page opposition

7  demonstrates that plaintiffs fail utterly to address municipal

8  defendants' arguments regarding dismissal of the second through

9  seventh causes of action alleging violations of the Commerce

10  Clause, fraud, the Fourth Amendment, the Fifth Amendment, the Tenth

11  Amendment or the California Constitution.  Rather, the opposition

12  focuses <u>entirely</u> on the first cause of action:  Violation of RFRA.

13    The Ninth Circuit has repeatedly held that district

14  courts "have a duty to construe pro se pleadings liberally,

15  including pro se motions as well as complaints."  <u>Bernhardt v Los</u>

16  <u>Angeles County</u>, 339 F3d 920, 925 (9th Cir 2003) (citing <u>Zichko v</u>

17  <u>Idaho</u>, 247 F3d 1015, 1020 (9th Cir 2001)); see <u>Karim-Panahi v Los</u>

18  <u>Angeles Police Dep't</u>, 839 F2d 621, 623 (9th Cir 1988) (stating that

19  in determining whether to dismiss a pro se complaint for failure to

20  state a claim, district courts "must afford plaintiff the benefit

21  of any doubt." (citation omitted)).  Plaintiffs' opposition does

22  not address (explicitly or implicitly) municipal defendants' motion

23  to dismiss the second through seventh causes of action.  Hence,

24  plaintiffs have provided the court with no opposition "liberally to

25  construe."  Even under the Ninth Circuit's extremely generous pro

26  se standards, the court cannot <u>create</u> an opposition for a pro se

27  plaintiff.

28  //

United States District Court

For the Northern District of California

1  Moreover, in light of the cogent legal arguments
2  contained in municipal defendants' motion to dismiss, the court is
3  convinced that plaintiffs' non-opposition represents a tactical
4  litigation decision rather than a mistake.  Indeed, it strains all
5  credulity to believe that plaintiffs (even though appearing pro se)
6  would simply forget to address defendants' arguments regarding
7  dismissal of <u>six</u> causes of action and <u>three</u> named defendants.

8  Accordingly, plaintiffs do not oppose municipal
9  defendants' motion to dismiss <u>all</u> claims against LCBS, LCSD and
10  Mitchell in his official capacity and thus these claims are
11  DISMISSED with prejudice.  Moreover, plaintiffs do not oppose
12  municipal defendants' motion to dismiss the second through seventh
13  causes of action alleged against Lake County and Mitchell in his
14  individual capacity and thus these claims are DISMISSED with
15  prejudice.

16

17  C

18  Accordingly, there remains only one claim to adjudicate
19  in municipal defendants' motion to dismiss:  Plaintiffs' claim that
20  Lake County and Mitchell, in assisting the federal defendants
21  execute the federal search warrant, violated plaintiffs' rights
22  under RFRA.  This final claim need not detain the court long.

23  In <u>City of Boerne v Flores</u>, 521 US 507 (1997), the
24  Supreme Court explicitly held that RFRA is unconstitutional "as
25  applied to non-federal governmental action" (i e, state and local
26  governments and actors).  <u>San Jose Christian College v Morgan Hill</u>,
27  360 F3d 1024, 1030 n3 (9th Cir 2004) (citing <u>Boerne</u>).  See also
28  <u>People of Guam v Guerrero</u>, 290 F3d 1210, 1219 (9th Cir 2002) ("The

U[nited] S[tates] Supreme Court declared RFRA unconstitutional as applied to the States because Congress exceeded its remedial authority under section 5 of the Fourteenth Amendment." (citing Boerne)).  Accord Brunskill v Boyd, 2005 US App LEXIS 8135, *9 (11th Cir 2005) ("RFRA does not apply to state regulations or state actors.").

Because RFRA does not apply to Lake County or to Sheriff Mitchell, neither can be held liable for violating RFRA.  Municipal defendants' motion to dismiss argued this precise legal point (Muni Mot at 8-9), but again, plaintiffs' opposition wholly ignores municipal defendants' Boerne arguments.

Instead, plaintiffs' opposition cites O Centro Espirita Beneficiente Uniao Do Vegetal v Ashcroft, 389 F3d 973 (10th Cir 2004), certiorari granted, 2005 US LEXIS 3326 (April 18, 2005) ("O Centro") for the proposition that Lake County and Mitchell must satisfy RFRA's "compelling interest test."  Doc #36 at 5-6.  O Centro is entirely inapposite, as that case involved the application of RFRA to the federal government, not state or local governments.  O Centro, 389 F3d at 1010 n7 (stating that although Boerne found "RFRA unconstitutional as applied to the states * * * RFRA is still applicable to the federal government." (citing Kikumura v Hurly, 242 F3d 950, 960 (10th Cir 2001)).

Because RFRA is inapplicable to Lake County and Sheriff Mitchell, it is beyond doubt that plaintiffs can prove no set of facts in support of their claim which would entitle them to relief.  Accordingly, dismissal under FRCP 12(b)(6) is appropriate.  Hughes, 449 US at 9.  Municipal defendants' motion to dismiss is GRANTED in its entirety.

United States District Court
For the Northern District of California

**United States District Court**

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IV

*Federal Defendants*

Federal defendants move to dismiss the seven causes of action alleged in the complaint pursuant to FRCP 12(b)(1) and alternatively, pursuant to FRCP 12(b)(6).  Fed Mot at 1.

A

The court must first address defendants' motion to dismiss for lack of subject matter jurisdiction.  See <u>Ruhrgas Ag v Marathon Oil Co</u>, 526 US 574, 578 (1999) ("Customarily, a federal court first resolves doubt about its jurisdiction over the subject matter * * *.").

The party asserting federal jurisdiction has the burden of proving the facts necessary for such jurisdiction.  See <u>Clayton Brokerage Co of St Louis, Inc v Bunzel</u>, 820 F2d 1459, 1462 (9th Cir 1987).  See also <u>Cornelius v Moxon</u>, 301 F Supp 783, 785-86 (D ND 1969) (party seeking relief is required either to plead the basis of federal jurisdiction or facts that would give rise to such jurisdiction).  In ruling on a Rule 12(b)(1) motion, the court's inquiry is not limited to the pleadings.  <u>United States v LSL Biotechnologies</u>, 379 F3d 672, 700 n13 (9th Cir 2004).

A suit against an executive department of the United States, or against federal employees in their official capacities, is considered a suit against the United States and thus subject to the defense of sovereign immunity.  <u>Hawaii v Gordon</u>, 373 US 57, 58 (1963); <u>Larson v Domestic & Foreign Commerce Corp</u>, 337 US 682, 704 (1949).  Accordingly, such suits cannot be maintained unless Congress has explicitly waived the sovereign immunity of the United

11

United States District Court

For the Northern District of California

States.  Lane v Pena, 518 US 187 (1996).  Absent such an explicit waiver, a district court lacks subject matter jurisdiction over any claim against the United States.  See Orff v United States, 358 F3d 1137, 1142 (9th Cir 2004) ("Any claim for which sovereign immunity has not been waived must be dismissed for lack of jurisdiction.") (citing Gilbert v DaGrossa, 756 F2d 1455 (9th Cir 1985)).

Federal officers may also be sued in their personal capacities for violating an individual's constitutional rights. Bivens v Six Unknown Named Agents of Federal Bureau of Narcotics, 403 US 388, 389 (1971).  If an officer is sued in his or her personal capacity, as opposed to his or her official capacity, the suit is not against the United States, and thus money damages can be received.  Id at 395.

1

Plaintiffs are suing (1) an executive branch of the United States (the DEA); (2) the Attorney General of the United States in his official capacity; and (3) DEA Administrator Karen Tandy in her official and individual capacities.  Compl at 3-4. Inasmuch as plaintiffs sue Gonzales and Tandy in their official capacities, this amounts to a single suit against the United States for all seven causes of action contained in the complaint.  Gordon, 373 US at 58.

As an initial matter, the court is required to dismiss plaintiffs' claims against the DEA.  The rationale underlying this dismissal is straightforward:  Plaintiffs' complaint names the DEA, a federal agency, and not the United States itself.  "It is well established that federal agencies are not subject to suits [e]o

12

nomine unless so authorized by Congress in 'explicit language.'" <u>City of Whittier v United States Dep't of Justice</u>, 598 F2d 561, 562 (9th Cir 1979) (quoting <u>Blackmare v Guerre</u>, 342 US 512, 515 (1952)).  Plaintiffs direct the court to no statute that explicitly allows suits against the DEA eo nomine, nor is the court aware of any such statute.  Accordingly, federal defendants' motion to dismiss all claims against the DEA for lack of subject matter jurisdiction is GRANTED.

Federal defendants' motion to dismiss argues that the court lacks subject matter jurisdiction to hear the claims contained in the complaint.  Plaintiffs' opposition is essentially a carbon copy of the opposition plaintiffs filed in response to municipal defendants' motion to dismiss, in that it focuses mainly on the first cause of action for violation of RFRA.  But unlike plaintiffs' opposition to municipal defendants' motion to dismiss, plaintiffs' opposition to federal defendants' motion also references the Federal Tort Claims Act (FTCA), 28 USC § 1346 et seq.  Opp at 5-6.

The court construes plaintiffs' opposition liberally and concludes that plaintiffs assert that, under the FTCA, the court has subject matter jurisdiction over the third cause of action against federal defendants, the cause of action for fraud.  The FTCA, however, does not waive sovereign immunity for claims of "misrepresentation" or "deceit."  28 USC § 2680(h).  Clearly, plaintiffs' claim for fraud must be premised on "misrepresentation" or "deceit."  Moreover, plaintiffs actually <u>concede</u> that their tort claim falls under § 2860(h).  Opp at 6 (stating that "the actions of defendants are categorized by Title 28 USC § 2680(a) and (h)").

United States District Court

For the Northern District of California

Accordingly, the court is without jurisdiction to hear plaintiffs' fraud claim against the United States.

The remainder of plaintiffs' opposition to federal defendants' motion to dismiss focuses entirely on RFRA. Accordingly, federal defendants' motion to dismiss the second through seventh causes of action is GRANTED and these claims are DISMISSED with prejudice.

2

The court next addresses whether it has subject matter jurisdiction over plaintiffs' RFRA claim against (1) the United States and (2) Tandy in her individual capacity.

*United States*

Although the Supreme Court has held RFRA unconstitutional as applied to the states, the Ninth Circuit has held that RFRA still applies to the federal government. Guerrero, 290 F3d at 1221 ("Certainly Congress can provide more individual liberties in the federal realm than the Constitution requires * * * and we now join our sister circuits in holding RFRA constitutional as applied in the federal realm."). Plaintiffs assert that the United States has violated their rights under RFRA and they seek monetary and injunctive relief.

Federal defendants do not appear to argue that the court lacks subject matter jurisdiction to hear plaintiffs' RFRA claim for injunctive relief against the United States. This concession is wise, for an important and well-known exception to the principle of sovereign immunity is that injunctive suits against government

United States District Court

For the Northern District of California

officers in their official capacity (i e, suits against the United States) are not barred.  See <u>Schneider v Smith</u>, 390 US 17 (1968); <u>Ex parte Young</u>, 209 US 123 (1908).  Indeed, Congress codified this exception in 5 USC § 702 of the Administrative Procedures Act (APA).  Section 702 of the APA reads:  "An action in [federal court] seeking relief other than money damages and stating a claim that an agency or employee thereof acted or failed to act in an official capacity * * * shall not be denied on the ground that it is against the United States."  Id.  This statute "allows the judiciary * * * to halt illegal government conduct" in the form of an injunction.  Erwin Chemerinsky, <u>Federal Jurisdiction</u> §9.2.2 (3d ed, Aspen 1999).

Rather, federal defendants argue that RFRA does not allow plaintiffs to recover <u>monetary</u> <u>damages</u> against the United States. Fed Mot at 11 ("[T]o the extent plaintiffs seek <u>damages</u> from the federal defendants pursuant to RFRA, they have not established this Court's subject-matter jurisdiction.").  Turning to the statute itself, RFRA states that "[a] person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain <u>appropriate</u> <u>relief</u> against a government."  42 USC § 2000bb-1(c) (emphasis added).

The question for resolution is whether the term "appropriate relief" encompasses money damages.  The court agrees with federal defendants -- and several other district courts that have considered the question -- that RFRA does <u>not</u> waive the United States' sovereign immunity from claims for damages.  See <u>Jama v United States Immigration and Naturalization Service</u>, 343 F Supp 2d

338, 373-374 (D NJ 2004); <u>Tinsley v Pittari</u>, 952 F Supp 384, 389 (ND Tex 1996); <u>Meyer v Federal Bureau of Prisons</u>, 929 F Supp 10, 13-14 (D DC 1996).

As mentioned above, the Court requires that waivers of sovereign immunity be "unequivocally expressed in statutory text" and that they "extend unambiguously to * * * monetary claims" if the waiver is to allow such claims. <u>Lane</u>, 518 US at 192. Like the courts in <u>Jama</u>, <u>Tinsley</u> and <u>Meyer</u>, the court concludes that RFRA's reference to "'appropriate relief is not the kind of unambiguous waiver necessary to subject the United States to liability for damages.'" <u>Jama</u>, 343 F Supp 2d at 373 (quoting <u>Tinsley</u>, 952 F Supp at 389)).

Accordingly, the court GRANTS federal defendants' motion to dismiss plaintiffs' damages claim under RFRA against the United States. But, as discussed above, the court has subject matter jurisdiction to hear plaintiffs' claim for injunctive relief under RFRA against the United States.

*Tandy Individually*

"That Congress did not waive sovereign immunity for [RFRA] damages suits does not necessarily mean that [a] plaintiff may not collect damages from [] individual defendants * * *." <u>Juma</u>, 343 F Supp 2d at 373. In <u>Jama</u>, the court astutely reasoned that RFRA "allows for individual capacity suits for money damages" against federal officers. Id at 374-76. The court will not recite <u>Jama</u>'s reasoning; it adopts it.

Moreover, federal defendants do not appear to argue that the court lacks subject matter jurisdiction to hear plaintiffs'

United States District Court

For the Northern District of California

16

United States District Court

For the Northern District of California

1    claims against Tandy in her individual capacity.  Accordingly, the

2    court concludes that it has subject matter jurisdiction over

3    plaintiffs' monetary and injunctive RFRA claims against Tandy in

4    her individual capacity.  This finding is of little import,

5    however, for as will be discussed shortly, the court concludes

6    plaintiffs have failed to state a RFRA claims against Tandy.

7

8                                     B

9            Next, federal defendants assert that plaintiffs have

10   failed to state a claim under RFRA against the United States and

11   Tandy.  Fed Mot at 16-17.

12

13                              *United States*

14           To state a claim under RFRA, plaintiffs must demonstrate

15   that the federal government has imposed a substantial burden on

16   their ability to practice freely their religion.  Guerrero, 290 F3d

17   at 1222; see also United States v Israel, 317 F3d 768, 771 (7th Cir

18   2003) ("[U]nder RFRA, a plaintiff establishes a prima facie

19   violation if he can demonstrate that the government's action was a

20   (1) substantial burden on a (2) sincere (3) exercise of

21   religion.").

22           Lepp and Senti allege that they are Rastafarians and are

23   required to possess, consume and distribute marijuana as mandated

24   by their "sincere religious beliefs in the Rastafari faith."  Compl

25   at 3 (emphasis added).  Moreover, the Ninth Circuit has already

26   "acknowledged that Rastafarianism is a legitimate religion, in

27   which marijuana plays a necessary and central role."  Guerrero, 290

28   F3d at 1213 (citing United States v Bauer, 84 F3d 1549, 1556 (9th

                                    17

United States District Court

For the Northern District of California

Cir 1996)).  **Furthermore, for the purpose of this motion only, the court assumes that Harris' religion, the "Universal Life Church," is a legitimate religion and that Harris sincerely believes in its tenets regarding the sacramental use of marijuana.**

**Next, plaintiffs clearly allege that the United States, via Gonzales and Tandy's enforcement of the Controlled Substance Act (CSA), 21 USC § 841, substantially burdens the exercise of their religion.  Specifically, plaintiffs' religions mandate that marijuana be consumed, grown and distributed.  Compl at 2-3.  The United States, however, criminalizes plaintiffs' possession and distribution of marijuana.  Moreover, the United States has seized 32,000 of plaintiffs' marijuana plants and there is no indication that the United States intends to stop such seizures in the future. These allegations undoubtedly amount to a substantial burden on plaintiffs' exercise of religion.  Hence, taking all of the allegations in the complaint as true, the United States has (1) imposed a substantial burden on (2) the exercise of plaintiffs' (3) sincere religious beliefs.**

**The fact that plaintiffs have sufficiently pled a prima facie case under RFRA does not, however, end the courts' inquiry. As mentioned above, a complaint must be dismissed under Rule 12(b)(6) if it is not premised on a "cognizable legal theory." Balisteri, 901 F2d at 699.**

**Under RFRA, the federal government**

**may substantially burden a person's exercise of religion [] if it demonstrates that application of the burden to the person --**

**(1) is in furtherance of a compelling governmental interest; and**

**United States District Court**
For the Northern District of California

   **(2) is the least restrictive means of furthering that compelling governmental interest.**

**42 USC § 2000bb-1(b).**

   Accordingly, plaintiffs' RFRA claim is necessarily premised on the legal theory that either (1) the federal government does not have a compelling interest in prohibiting the possession, consumption and distribution of marijuana or (2) if such a compelling interest exists, the CSA does not represent the least restrictive means of furthering this compelling interest.  Neither of these legal theories, however, is cognizable.

            i

   First, and much to plaintiffs' chagrin, Congress undoubtedly believes marijuana has a "substantial and detrimental effect on the health and general welfare of the American people." 21 USC 801(2) ("Congressional findings and declarations; controlled substances").  In light of Congress' findings, courts, both pre- and post-RFRA, have held that Congress has a compelling interest in preventing the abuse of marijuana, despite the burden this regulation places on religion.  See <u>Israel</u>, 317 F3d at 771 (concluding that, under RFRA, Congress has a compelling interest in regulating marijuana because "there is ample medical evidence establishing the fact that the excessive use of marijuana often times leads to the use of stronger drugs such as heroin and crack cocaine." (citation omitted); <u>United States v Brown</u>, 1995 US App LEXIS 34750, *5 (8th Cir 1995) ("We have recognized that the government has a compelling state interest in controlling the use of marijuana." (citation omitted)); <u>United States v Rush</u>, 738 F2d

19

United States District Court

For the Northern District of California

497, 512-513 (1st Cir 1984) (recognizing the "overriding governmental interest in regulating marijuana."); <u>Leary v United States</u>, 383 F2d 851, 861 (5th Cir 1967) ("It would be difficult to imagine the harm which would result if the criminal statutes against marihuana were nullified as to those who claim the right to posses and traffic in this drug for religious purposes.").

Like the courts cited above, this court may not second-guess Congress' conclusion that marijuana presents a compelling threat to individual health and social welfare.  See <u>Rush</u>, 738 F2d at 512 ("Congress has weighed the evidence [regarding the regulation of marijuana] and reached a conclusion which it is not this court's task to review *de novo*.").

ii

Next, the court concludes that the CSA's prohibition regarding marijuana is the least restrictive means of achieving this compelling interest.  Like other courts that have considered the question, this court cannot imagine a judicially-created religious exemption that would still protect against the kinds of misuses of marijuana Congress sought to prevent in enacting the CSA.  <u>Israel</u>, 317 F3d at 772 ("Any judicial attempt to carve out a religious exemption * * * would lead to significant administrative problems * * * and open the door to a weed-like proliferation of claims for religious exemptions." (citation omitted)).

Accordingly, because it is beyond legal cavil that the federal government has a compelling interest in regulating marijuana and because the CSA is the least restrictive means to achieve this interest, plaintiffs' RFRA claim against the United

States does not rest on a cognizable legal theory.  Dismissal under Rule 12(b)(6) is thus appropriate.  <u>Balisteri</u>, 901 F2d at 699.

In reaching this conclusion, however, the court is not blind to the arguments made by plaintiffs at oral argument regarding marijuana's valuable uses and its low potential for abuse or health complications.  But "[t]he determination of whether new evidence regarding either the medical use of marijuana or the drug's potential for abuse should result in a reclassification of marijuana [under the CSA] is a matter for legislative or administrative, not judicial, judgment."  <u>United States v Middleton</u>, 690 F2d 820, 823 (11th Cir 1982).

*Tandy individually*

Aside from the legal ground discussed above, plaintiffs' RFRA claim against Tandy in her individual capacity fails for an additional reason:  Plaintiffs do not allege that Tandy was individually involved in (1) ordering DEA agents to obtain a search warrant of the Lucerne Parcel, (2) applying for the search warrant before Magistrate Judge Zimmerman, (3) actually searching the Lucerne Parcel or (4) actually seizing the 32,000 marijuana plants.  In essence, the complaint does not allege that Tandy was involved <u>at all</u> with the August 17, 2004, raid on the Lucerne Parcel.

//
//
//
//
//

V

In sum, the municipal and federal defendants' motion to dismiss plaintiffs' complaint with prejudice is GRANTED.  The clerk is directed to ENTER JUDGMENT in favor of defendants, CLOSE the file and TERMINATE all motions.


SO ORDERED.

_____

VAUGHN R WALKER

United States District Chief Judge

**United States District Court**
For the Northern District of California

22